Judge Owsley
delivered the Opinion of the Court.
Scott brought suit in equity for the purpose of setting aside; as fraudulent, conveyances made by M’Millan, and to subject the property conveyed_ to the satisfaction Of a large demand which he held upon M’Millan. After the suit of Scott was commenced, the brother of M’Millan, to whom the conveyances sought to ho set aside were made, reconveyed the property to M’Millan, who thereupon executed deeds ef mortgage for the same property to other creditors of his. The creditors to whom the mortgages were made, M’Millan and his brother to whom the alleged fraudulent conveyances were given, were all made defendants to Scott’s suit. A decree was pronounced by the circuit court; but it not being satisfactory to Scott, the cause was brought by him to this court. The decree of the circuit court was reversed, and the cause remanded for a decree to be entered; among other things, setting aside the conveyances from M’Millan to his brother as fraudulent, and subjecting the property, so fraudulently conveyed, to sale, in sat* isfaction of Scott’s demand. For a more particular statement of the facts of that case, we would refer to the report contained in the first volume ofLittell’s reports, 302.
After the cause returned to the circuit court, a decree was. pronounced in conformity to the mandate of this court; and a commissioner was appointed to make sale of the property. The property was accordingly exposed to sale, and John 2-9 Scott became the purchaser. Report of the sale was. made by the commissioner, and being approved by the court, M’Millan and all persons claiming under him, were finally decreed and ordered to surrender the possession of the property, to the purchaser Scott.
Before the sale and decree, but after the pendency of Scott’s suit against M’Millan, other creditors *74 of M’Millan commenced actions at law against him, and under judgments therein recovered, sued out executions and caused the same property to be sold. At that sale Coleman became the purchaser, and after John 2-9 Scott purchased under the decree, Coleman and those claiming as tenants under him, having obtained the possession, refused to restore the property.
Scott’s petition to the chancellor for the possession.
Coleman resists the application of Scott and the court overrule it.
Suit in equity by a creditor, to set aside a fraudulent deed, and to have the land sold, gives complainant a lien on the land, which is not defeated by a bona fide sale, to creditors or under an execution on the judgment of another creditor. /
John 2-9 Scott, then, after having notified Coleman and his tenants, petitioned the court to have the benefit of his purchase, and to be put into the possession.
Coleman resisted the petition, on the ground of his being a purchaser under executions, prior to the decree in favor of Scott against M’Millan, and the court refused any aid to Scott, and overruled his petition.
We cannot concur with that decision of the circuit court. By adverting to the opinion formerly given, when the cause was heretofore before this court, it will he found that, in effect, every principle is therein decided, which goes to show that Coleman should not be protected in his purchase under the executions, against the purchase by Scott under the decree. It was then decided that by his suit against M’Millan &c. the complainant Scott acquired a lien on the property in contest, for the satisfaction of his demand, and that notwithstanding any subsequent conveyance by M’Millan to honest creditors, the property remained liable to the claim of Scott; and if so, it is not discerned how it is possible that Coleman through a purchaser at a sale, under the execution of a creditor of M’Millan, made during the pendency of that suit, can occupy more favorable ground. Under the law subjecting lands to sale, it is only such interest as the defendant has and may lawfully part with, that may be sold under execution, and as M’Millan could not after the pendency of the suit, defeat Scott’s lien by selling and conveying the land to others, the right of Scott should not be prejudiced by the sale of an officer under an execution against M’Millan.
The petition of Scott ought therefore to have *75 been allowed. Coleman must be treated as a pendente lite purchaser, and even according to the ancient chancery practice, such a purchaser, though not a party to the suit, would, upon petition, be compelled to surrender the possession. If after the merits of a contest is fully and finally settled, and after the land, which was the main matter of dispute, is sold under the decree of the court, the purchaser should have to resort to his action at law to obtain the possession either from the defendant or one who gained possession, whilst the suit was pending, it must be conceded that the powers of courts of equity must be inadequate to apply the remedy necessary to enforce their decrees. Such is not, however, the case.
In such case, the purchaser under the execution pendente lite, will be overreached by the purchase under the decree, and the chancellor will compel him to surrender the possession on a petition.
Practice in chancery, compelling the surrender of the possession of lands sold under a decree to the purchaser.
Statute authorizing a writ of execution for the possession of lands decreed to be surrendered.
Chancellor Kent of New-York, with a perspicuity characteristic of his opinions, has laid down the rule upon this subject, and has proved from reason and by reference to many adjudged cases, that by petition, the purchaser of property under a decree, will be put into possession of his purchase. The course of proceeding, as stated by him, seems an - ciently to have been; “first to obtain an order or decree on the defendant to deliver possession, which order was served on the defendant, accompanied with a demand of the possession; and there was sometimes a formal writ of execution of the order to deliver possession. An attachment then issued for disobeying this order, but that, attachment, it seems, was only matter of form, and was not to be served. The next act was, an order for an injunction against the tenant to deliver possession, which issued of course, on affidavit of the previous steps, and then, on affidavit of the service of injunction and refusal, a writ of assistance to the sheriff to put the party into possession, issued, of course on motion, without notice.” 4. John. Ch. R. 609,
But in this country, we have a statute which expressly authorizes executions to go upon decrees in chancery, so that the propriety of now putting a purchaser into possession of land, sold under a decree, is, if possible, more palpable than according to the ancient practice.
*76 -The decision of the court overruling the petition, must therefore, be reversed with cost, the cause remanded to the court below, and the prayer of the petition decreed. '

Mr. Loughborough presented to the court, a petition for • ' are-consideration. .

The undersigned, for Coleman, would respectfully call the attention of the court, to a point in this case, which does not appear to have been noticed, either by the counsel in argument, or in the opinion delivered; and should it be deemed worthy of discussion, would ash a re-hearing of the cause..
The plaintiff now claims by a sale made by Lamme, the commissioner, under an interlocutory-decree of March, 1823'. That decree, made upon the report of the auditors, which ascertained the balance due the complainant, and which confirmed that report, notwithstanding the defendants’ exceptions, and adjudged the balance there stated to the complainants, was reversed by this court on the 19th of October, 1824. 1 Monroe, ISO. By the mandate of this court then pronounced,' the cause was remanded for a final decree, pursuant to the principles laid down in that opinion.
It is respectfully suggested that by this reversal, the cause was placed in the same attitude, in which it stood previous to the interlocutory decree in the court below. The accounts between complainant and defendant, were therefore, still unsettled, and the balance uncertain. It' was necessary to restate the mutual demands of the parties, and again by the intervention of auditors or otherwise, ascertain the amount due to Scott previous to entering a final decree against M’Millan, subjecting his property to the payment of it. In point of fact, though not apparent upon the record, this has not been done. The case now stands in the court below, as jt was remanded by this court in 1824. What balance, therefore, is due to Scott is still uncertain. Whether, when ascertained, it might not be discharged by the sale of the personal property of *77 M’Millan, or of other real estate of less value than that claimed, by the plaintiff in this case, and therefore, the first in propriety to be sold under the chancellor’s order, does not appear.
Haggin, Crittenden, §c. for plaintiff; Loughborough Monroe, for defendant.
If by the reversal of the decree of 1823, under which the sale to Scott was made, the cause is thrown back to the position it occupied previous to that decree, as between the parties to it, shall a purchaser under that decree so reversed, be preferred to one under execution nearly two years previous?
THE COURT
overruled the petition for the rehearing, and the mandate issued according to the original decree.